HALL, Circuit Judge,
concurring in the order denying rehearing in banc:
This petition for rehearing in banc challenges the conclusion of the panel, consisting of senior judges Leval and Sack, and me, that the Racketeer Influenced Corrupt Organizations Act (“RICO”), 18 U.S.C. §§ 1961 et seq., applies to foreign conduct when liability is based on “racketeering acts” consisting of violations of predicate statutes which Congress expressly made applicable to foreign conduct. See European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129 (2d Cir.2014). As Judges Leval and Sack, being senior judges, have no vote on whether to grant rehearing in banc, I write independently in support of denial of the petition.
In considering the petition for panel rehearing, our panel reexamined our initial view, as well as its compatibility with Morrison v. Natl Australia Bank, Ltd., 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010), and with our court’s ruling in Norex Petroleum Ltd. v. Access Industries, Inc., 631 F.3d 29 (2d Cir.2010), and reaffirmed the soundness of our conclusion.
RICO applies when the evidence shows a pattern of “racketeering activity.” 18 U.S.C. §§ 1962, 1964. “Racketeering activity” is defined as “any act ... indictable under” specified criminal statutes. Id. § 1961(1). The criminal statutes specified are colloquially referred to as RICO “predicates.” As the panel opinion noted, some of the specified predicate statutes expressly provide that extraterritorial conduct is indictable. See RJR Nabisco, 764 F.3d at 136.
Many of the predicates that apply to foreign conduct relate to international terrorism. A few weeks after the terrorist attacks of September 11, 2001, Congress passed the USA PATRIOT Act of 2001 (the “Patriot Act”), an anti-terrorism measure, which, among other provisions, amended RICO by adding to its list of predicates nearly 20 antiterrorism statutes that expressly apply to foreign conduct. Pub.L. No. 107-56, § 813, 115 Stat. 272, 382. The Patriot Act did this by adding those statutes to RICO’s definition of “racketeering activity” specified in § 1961(1) as a basis of RICO liability.[1] 18 \ *125 U.S.C. § 1961(1). The House Report for the Patriot Act states, “[t]he RICO provisions in the bill.... enhance the civil and criminal consequences of certain crimes that have been deemed RICO predicates by Congress and provide better investigative and prosecutorial tools to identify and prove crimes.” H.R.Rep. No. 107-236, at 70 (2001). Since 2001, Congress has added additional explicitly extraterritorial crimes to RICO, for a total of nearly 30 predicate racketeering acts that expressly apply to foreign conduct, nearly all of them relating to international terrorism directed against United States interests. See, e.g., 18 U.S.C. §§ 2332g (conduct involving antiaircraft missile systems); 2339D (terrorist military training). Some of RICO’s predicate statutes indeed apply only to conduct outside the United States. See, e.g., 18 U.S.C. § 2332 (killing, and attempting to kill, “a national of the United States, while such national is outside the United States ” (emphasis added)); 18 U.S.C. § 2423(c) (engaging in illicit sexual conduct in foreign places by a U.S. citizen or permanent resident).
The panel opinion concluded that “[b]y incorporating these statutes into RICO as predicate racketeering acts, Congress has clearly communicated its intention that RICO apply to extraterritorial conduct to the extent that extraterritorial violations of those statutes serve as the basis for RICO liability.” RJR Nabisco, 764 F.3d at 137. That conclusion was sound. The RICO statute explicitly states that acts “indictable under” the specified statutes constitute “racketeering activity,” to which RICO liability attaches, and many of these predicate statutes expressly provide that foreign conduct is indictable.
This interpretation of RICO is wholly consistent with Morrison. In Morrison, the Supreme Court explained that there is a presumption against construing United States statutes as applying extraterritorially but that the presumption is overcome when the statute clearly manifests a congressional intent that it apply extraterritorially. See Morrison, 561 U.S. at 265, 130 S.Ct. 2869. Courts are not to justify extraterritorial application by speculating that Congress would have wanted that had it focused on the question. On the other hand, when Congress, acting within its powers, has explicitly provided for extraterritorial application of a statute, as it has done by incorporating statutes that apply extraterritorially into RICO as predicates, the statute must be interpreted as Congress has directed. The purpose of Morrison was to bar courts from attributing to Congress an intent that its statutes apply extraterritorially in the absence of a clear expression thereof; it was not to prevent courts from giving effect to Congress’s clearly manifested intentions that certain statutes apply extraterritorially.
Finally, the panel’s holding on this point is consistent with Norex. The panel disagreed with the district court’s interpretation of Norex as concluding that RICO could never have extraterritorial application. To the question of whether RICO, in any of its applications, has extraterritorial reach, the Norex opinion devotes two sentences, each of which could have two meanings. The first sentence, derived from our court’s prior opinion in North South Finance Corp. v. Al-Turki, 100 F.3d 1046, 1051 (2d Cir.1996), states that “the RICO statute is silent as to any extraterritorial application.” The second states that Morrison “forecloses [the Norex plaintiffs] argument that because a number of RICO’s predicates possess an extraterritorial reach, RICO itself possesses an extraterritorial reach.” Norex, 631 F.3d at 33.[2]
*126 The first of these sentences, noting RICO’s silence on extraterritorial application, could mean that the RICO statute does not -suggest that it might broadly apply in all of its provisions to extraterritorial conduct. Alternatively, the words of the sentence could also mean that RICO is “silent” as to whether any of its component provisions can ever apply to extraterritorial conduct. The first interpretation seems far more probable. First, if the statement carries the former meaning, it is indisputably correct. The RICO statute is indeed silent as to general extraterritorial application. There are no words in the statute which suggest, or even discuss, the possibility that foreign conduct might be considered violative of RICO, without regard to whether the particular predicate invoked applies to foreign conduct. On the other hand, if given the second meaning, the statement would be either flatly incorrect, or at least misleading. As explained above, RICO incorporates by reference the terms of other statutes. The Act explicitly states that racketeering activity, which serves as a basis of RICO liability, includes any act “indictable under” the incorporated predicate statutes, a number of which expressly provide that foreign conduct is indictable. Whatever ultimate conclusion one might draw, RICO certainly cannot be fairly described as “silent” on the question whether any predicate acts of racketeering can consist of foreign conduct. Furthermore, the sentence about silence, if construed to mean that RICO contains no indication whether any of its predicate acts of racketeering can include foreign conduct, would seem contradicted by the second sentence on the issue, which recognizes that “a number of RICO’s predicates possess an extraterritorial reach.” Norex, 631 F.3d at 33.
The second sentence, if taken out of context, could have either of two meanings:
(1) In view of Morrison, we reject the plaintiff’s argument that, by providing for extraterritorial application of some of RICO’s predicates, Congress manifested a clear intention that RICO have extraterritorial application in all of its provisions.
(2) Notwithstanding Congress’s express provision that “racketeering activity” include some clearly specified foreign conduct, Morrison requires that racketeering activity be construed as excluding all foreign conduct.
The first interpretation is clear, logical, and entirely consistent with Morrison. Under Morrison, the presumption against extraterritorial applicability requires that statutes be understood not to apply extra-territorially absent a clear provision for extraterritorial application.[3]
*127 The fact- that Congress made clear provision in the terms of RICO that some of its predicates apply extraterritorially does not manifest a clear congressional intent that its other provisions also apply extra-territorially. With respect to extraterritorial application of these other provisions, RICO would flunk the Morrison test. This is so clear a consequence of Morrison’s rule that one short sentence is entirely sufficient to state the point. It requires no further explanation.
On the other hand, if the Norex panel had in mind version (2) when it said that “Morrison ... forecloses [the plaintiffs] argument,” one would wonder why the panel came to that conclusion. Id. Where Congress expressly provided that acts “indictable” under statutes listed in RICO are “racketeering acts,” which justify RICO liability, and Congress included in that list statutes that expressly provide for extraterritorial application (indeed some that apply only to foreign conduct), Congress did exactly what Morrison requires for extraterritorial application. It manifested a clear intention that RICO apply extraterritorially — to that limited extent. If the Norex opinion meant that, notwithstanding this clear manifestation of congressional intent, Morrison requires that RICO be interpreted as never applying to foreign conduct, one would wonder why the Norex panel reached that conclusion and how it could be justified. The assertion would cry out for further explanation, if indeed any adequate explanation could be found. Notwithstanding the facial ambiguity of the sentence, the brevity of the Norex panel’s treatment of the subject strongly suggests that it meant to convey the simpie, noncontroversial proposition expressed in version (1) above, and not the puzzling proposition expressed in version (2).
In short, recognizing the potential ambiguity in Norex’s brief discussion of this point, by far the sounder interpretation of that ruling is that RICO’s clear manifestation of intent that some of its provisions apply to foreign conduct permits extraterritorial application of RICO in those situations, but does not justify interpreting every provision of RICO as being extraterritorial. The panel’s ruling in this case was in full agreement with that proposition.
Some colleagues are -troubled by the prospect of applying RICO to extraterritorial conduct, which they deem unwise. Whether this is wise or unwise is not the court’s business when Congress has legislated clearly on the issue. Congress provided in the RICO statute that acts “indictable under” a list of predicate acts -are racketeering acts. That ends our inquiry. I therefore concur with the court’s decision to deny rehearing in banc.

. Prior to the Patriot Act, only a few RICO provisions specified extraterritorial application.

. Judge Raggi twice quotes Norex as saying, because " 'RICO is silent as to any extraterritorial application,' ... therefore, 'it has none.''' See Raggi Dissent at 127; see also id. at 133. This will mislead the reader, although doubtless unintentionally. It is true that the words "it has none” appear in the Norex decision. But in uttering those words, Norex was not speaking about the RICO statute. It was simply quoting Morrison’s framework for deciding whether a statute has extraterritorial application. Morrison stated (and Norex quoted), "[W]hen a statute gives no clear indication of an extraterritorial application, it has none." Norex, 631 F.3d at 32 (emphasis added). Norex never said that RICO has no extraterritorial application.

. Judge Raggi suggests that Morrison’s discussion of Section 30(b) of the Exchange Act supports her view that RICO can never have extraterritorial application. See Raggi Dissent at 133-34. In fact, this portion of Morrison 's discussion supports the' panel’s interpretation of RICO. In Morrison, the parties argued that, because one small provision of the Exchange Act could potentially apply ex-traterritorially, the entire Act should be read as applying extraterritorially. See Morrison, 561 U.S. at 263-65, 130 S.Ct. 2869. The *127 Morrison court rejected this argument, holding that "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms.” Morrison, 561 U.S. at 265, 130 S.Ct. 2869 (emphasis added). In RJR Nabisco, our panel followed precisely this line of reasoning, holding that where Congress has prescribed extraterritorial application for certain of RICO's predicates, it applies extraterritorially “only to [that] extent.” 764 F.3d at 136.